RECEIVED
JUL 0 7 2005
ROBERT H. SHEMWELL, CLERK
WESTERN DISTRICT OF LOUISIANA
MONROE LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | |
|---|---|
| GARY MCCARTER, ET AL. | CIVIL ACTION NO. 3:02-2242<br>C/W NO. 03-2005 |
| VERSUS | JUDGE ROBERT G. JAMES |
| LUMBERMEN'S UNDERWRITING ALLIANCE, ET AL. | MAG. JUDGE KAREN L. HAYES |

## RULING

Pending before the Court are several motions pertaining to the disbursement of funds in the registry of the Court. The Court will address the motions as they relate to each other.

I. **Claims for Attorneys' Fees by Gary McCarter's Former Attorneys**

   A. **Award of Fees under a Quantum Meruit Theory**

On March 10, 2005, Christian Creed and Richard Wagner, former attorneys for Gary McCarter, filed a Motion for Disbursement of Registry Funds [Doc. No. 362], seeking to recover under an oral contingency fee agreement with Gary McCarter's current attorney, Jim Rountree. In this motion, Wagner sought to recover 50% of the attorney's fees Rountree would earn, and Creed sought to recover one-half of his out-of-pocket expenses. In the alternative, Wagner sought attorney's fees under a quantum meruit theory of recovery.

On March 17, 2005, Rountree filed a memorandum in opposition to Creed and Wagner's Motion for Disbursement of Registry Funds. Rountree admits agreeing to pay Creed for one-half of his expenses and has reimbursed Creed that amount, mooting Creed's claim for expenses. However, Rountree contends that he and Wagner did not have an agreement to share fees, and

Wagner is not entitled to recover fees.

On April 7, 2005, Wagner and Creed filed a Motion to Amend/Correct Motion for Disbursement of Registry Funds [Doc. No. 372]. In the amended motion, Wagner withdrew his request for 50% of the attorney's fees and instead seeks only a quantum meruit determination by the Court. Creed and Wagner suggest that an award of $10,000 is appropriate, which they have agreed to share equally because of the additional work necessitated by the filing of these motions. Wagner and Creed submitted their own affidavits and an affidavit from Henry Terhoeve indicating the work that Wagner and Creed performed on behalf of Gary McCarter between October 2001 and August 2003. Wagner estimates that he spent 50 hours on the case, and Creed estimates that he spent 20 hours.

At the hearing conducted on June 14, 2005, the Court heard the testimony of Rountree, Creed, and Wagner.[1] Janet Floyd,[2] a paralegal who formerly performed contract work for Creed, also testified. The Court also heard oral argument from Rountree and Ed Patton, attorney for Creed and Wagner on their claim for attorneys' fees. It was clear from the hearing that Wagner seeks to recover attorney's fees for the work he performed under a quantum meruit theory, not under an alleged oral agreement.

All parties appear to agree that the Fifth Circuit authority on the issue of quantum meruit recovery of attorney's fees is found in *P & E Boat Rentals, Inc. v. Martzell, Thomas & Bickford*, 928 F.2d 662 (5th Cir. 1991). In that case, the court applied the then-applicable Disciplinary Rule 2-107, which prohibited an attorney from dividing a legal fee with another attorney unless

---

[1] Wagner participated in the hearing by telephone.

[2] Floyd now works with Bryan Racer, attorney for Milbourn.

certain requirements were met. *Id.* at 664. Assuming these ethical requirements were met, the court found that "fees may be divided only on a quantum meruit basis," and an attorney "may receive payment only for the services he performed and the responsibilities he assumed." *Id.*

Since that time, the Code of Professional Responsibility has been replaced by the Rules of Professional Conduct. At the time Rountree took over representation of Gary McCarter and until March 1, 2004, Rule 1.5(e)[3] provided that lawyers who are not in the same firm may divide a fee only if (1) the division is in proportion to the services performed by each lawyer or, by written agreement with the client, each lawyer assumes joint responsibility for the representation; (2) the client is advised and does not object to the participation of all lawyers involved; and (3) the total fee is reasonable. Like the earlier disciplinary rule, this Rule contemplates that Wagner can recover payment only for services he performed and the responsibilities he assumed.

In this case, the Court finds that an award of $7,500 to Wagner and Creed is appropriate. While Rountree contends that Wagner should not recover anything because Gary McCarter did not agree in writing to joint representation, written agreement from the client is not required under the prior version of the rule. Further, this case involved successive, rather than joint, representation. Gary McCarter certainly agreed to Wagner's prior representation and, in fact, signed a contract with Wagner and with Creed (regardless of his current dissatisfaction with Wagner). He also obviously agreed to Rountree's later representation. Additionally, the time

---

[3]The current version of Rule 1.5(e), which became effective on March 1, 2004, provides that attorneys who are not of the same firm may divide a fee only if (1) "the client agrees in writing to the representation by all of the lawyers involved, and is advised in writing as to the share of the fee that each lawyer will receive; (2) the total fee is reasonable; and (3) each lawyer renders meaningful legal services for the client in the matter." However, the Court finds that the 1987 version of Rule 1.5(e) is applicable to this case since Rountree's representation of Gary McCarter commenced prior to March 2004.

3

records show that Wagner and Creed's representation did result in some benefit to Gary McCarter, even if the case was not handled as well as Rountree thought it should have been. Wagner and Creed obtained a number of medical records and ensured that the lawsuit was filed within the applicable prescriptive period.

On the other hand, it is clear from the testimony at the hearing and from the Court's involvement in pre-trial matters, that Rountree carried a far more significant burden, had far more responsibilities, and performed far more services for Gary McCarter in the lawsuit. Therefore, the Court believes that the majority of the fees recovered should be awarded to Rountree.

The Court finds that $150 is a reasonable hourly rate for the work performed by Creed and Wagner given their experience, the tasks they completed, and comparable rates in the community. The Court further finds that their time spent in work beneficial to the lawsuit, particularly in obtaining medical records and the drafting and filing of the lawsuit, should be compensated at a reasonable time of 50 hours. Therefore, the Court concludes that $7,500 is an appropriate award for the time spent by Wagner and Creed in activities beneficial to the lawsuit.

The Motion for Disbursement of Registry Funds [Doc. No. 362] filed by Creed and Wagner is DENIED AS MOOT in light of their amended motion. The Motion to Amend/Correct Motion for Disbursement of Registry Funds [Doc. No. 372] is GRANTED IN PART, and Creed and Wagner are awarded $7,500 jointly as attorneys' fees to be disbursed from the registry of the Court.

### B.  The McCarters' Motion for Sanctions

The McCarters filed a Motion for Sanctions [Doc. No. 373] against Wagner and

Creed alleging that the memorandum in support of Wagner and Creed's original motion for attorney's fees and costs [Doc. No. 362] misrepresented law and fact. They contend that there was never an agreement of joint representation by Wagner and Rountree and that any such agreement would have violated Rule 1.5 of the Louisiana Rules of Professional Conduct because McCarter was not informed that he would be jointly represented, nor did he agree in writing to such representation. According to the McCarters, even the amended motion seeking quantum meruit recovery is based on false statements of fact. The McCarters also contend that the amended motion does not resolve the misrepresentations of law in the original motion. Therefore, the McCarters seek Rule 11 sanctions against Wagner and Creed.

Wagner and Creed oppose the Motion for Sanctions. They contend, first, that Rule 11 sanctions are not proper because of two procedural defects. First, they argue that Rountree never properly served the motion. He sent it by e-mail, but e-mail is a proper method of service only if the opposing party consents to receipt of service by e-mail. They did not consent. Second, Rountree failed to attach a copy of the original memorandum prepared in support of the Rule 11 motion.

In the alternative, Wagner and Creed contend that their amended motion complies with Rule 11(a) and does not violate Rule 11(b). They point out that their amended motion is supported by affidavits and by Fifth Circuit authority. They also point out that McCarter did not file any opposition to their amended motion. While he did submit a memorandum in support of his Motion for Sanctions, a Rule 11 memorandum cannot constitute an opposition because a Rule 11 motion must be made separately from other motions and requests. *See* Fed. R. Civ. P. 11(c)(1)(A).

Finally, Wagner and Creed argue that Gary McCarter cannot rely on arguments made in the original motion once it was amended because the safe harbor provisions of Rule 11 would be rendered meaningless.

Having considered the arguments of counsel and the record in this matter, the Court finds that Rule 11 sanctions are not appropriate. The procedural requirements of Rule 11 were not met in that Wagner and Creed were not properly served with the Motion for Sanctions.[4] Further, Wagner and Creed's amended motion effectively replaced their original motion within the 21-day safe harbor period, and the Court finds that it complies with the requirements of Rule 11. Under these circumstances, the Motion for Sanctions [Doc. No. 373] is DENIED.

## II. The Disputed Workers' Compensation Amounts

The remaining dispute in this matter concerns the proper amount to be withdrawn from the registry of the Court by Covenant Transport, Inc. In their Second Amended Motion to Withdraw Deposited Funds [Doc. No. 360], as later amended by their Motion to Withdraw Funds to Which There is No Dispute [Doc. No. 379], the McCarters seek the withdrawal of all but $54,877.53 of the total amount of $263,409.62 deposited into the registry of the Court. They did not seek to withdraw the $10,000 claimed by Creed and Wagner as attorneys' fees nor the $44,877.53 claimed by Covenant as reimbursement for workers' compensation payments.

Although not addressed in the McCarters' own motions, the heart of the dispute between Covenant and the McCarters is whether Rountree should receive at least some portion of the

---

[4]The Court rejects Creed and Wagner's argument that the Motion for Sanctions should fail because Rountree did not attach a memorandum in the copy sent to them. Although Rountree did not technically send them a "memorandum," Rule 11(c)(1) states only that the "motion" must "describe the specific conduct alleged to violate subdivision (b)." In this case, Rountree's motion was accompanied by a letter clearly stating the specific grounds for his motion.

workers' compensation award to Covenant as attorney's fees pursuant to La. Rev. Stat. § 23:1103 and *Moody v. Arabie*, 498 So.2d 1081 (La. 1986).

Similarly, Bryan Racer, as attorney for Samuel Jacob Milbourn, has also filed a Motion to Withdraw Deposited Funds [Doc. No. 380], seeking to withdraw an additional amount of $3,787.56 for attorney's fees under La. Rev. Stat. § 23:1103 and *Moody*.

Covenant filed a First Amended Motion to Withdraw Deposited Funds[5] [Doc. No. 386], stating that it is entitled to withdraw $47,514.60 to cover the workers' compensation payments made on behalf of Gary McCarter plus interest, $12,747.91 to cover the workers' compensation and medical payments made on behalf of Milbourn, and $21,358.82 to cover Covenant's property damage, plus interest. The Court's Amended Judgment recognized Covenant's lien for workers' compensation payments on behalf of Gary McCarter in the amount of $42,351.47 and its lien for workers' compensation payments on behalf of Jacob Milbourn in the amount of $11,362.67. Covenant was awarded property damages in the amount of $20,767.86. The amounts now sought by Covenant include its calculations of pre-judgment interest. The $21,358.82 amount for property damages and interest is not in dispute. However, the amounts to be withdrawn by Covenant as reimbursement for workers' compensation and medical payments and for pre-judgment and post-judgment interest is in dispute.

Covenant contends that it is entitled to the full amount of reimbursement for medical and workers' compensation payments made on behalf of McCarter and Milbourn because that is what the parties stipulated to in the pre-trial order. Covenant further contends that Rountree and Racer

---

[5]Although styled a "first amended motion," Covenant only filed one motion to withdraw. Covenant's original motion was deficient, but instead of simply correcting the deficiency, Covenant filed a first amended motion.

are not entitled to attorneys' fees under La. Rev. Stat. § 23:1103 and *Moody* because (1) Covenant was represented by counsel throughout the litigation and (2) the amount of compensation benefits were stipulated to by the parties and did not have to be proven. Covenant cites to a Louisiana Fourth Circuit case in which attorney's fees were not awarded to the plaintiff's attorney out of the intervenor's recovery where the "intervention . . . put plaintiffs to no additional expenses or effort, and where there is no showing that plaintiffs or their attorneys would not have prosecuted . . . [the]claim for the net recovery actually received or for the [attorney's] fee received" absent this additional contribution by the intervenor. *Pisciotta v. Sears, Roebuck & Co.*, 413 So.2d 547, 550 (La. App. 4 Cir. 1982). Covenant also cites *Rivet v. LeBlanc*, 600 So.2d 1358, 1363 (La. App. 1 Cir. 1992), in arguing that one of the factors to be considered under *Moody* is "the time and resources expended by the intervenor . . . which may have aided in the recovery." Covenant expended significant time and resources defending this case. Finally, Covenant contends that it is entitled to pre-judgment and post-judgment interest.

Milbourn and McCarter respond that the parties stipulated at trial only to the amounts of workers' compensation and medical payments paid by Covenant and then stated that if "there is a monetary award for such amount, then the money will be disbursed in accordance with law." They argue that the "law," under La. Rev. Stat. § 23:1103 and *Moody* is that an employer will bear a proportionate share of the attorney's fees recovery against a third party, with a cap at one-third of the gross lien. The amount to be paid by the employer is determined based on the percentage that the amount of compensation paid for the lien bears to the total recovery.

At the hearing in this matter, Racer and Rountree pointed out that they represented their clients for approximately 1½ years before Covenant became actively involved in the case.

Additionally, they pointed out that they presented all evidence in the damages portion of the trial, and the Covenant attorneys were not even present. They argue that if it were not for their efforts in the damages stage, Covenant might not have recovered anything.

Counsel for Covenant responded that it had been involved in the case from the very beginning, even sending an attorney out to the accident site, and that Covenant expended in excess of $30,000 to provide an expert for trial.

Louisiana Revised Statute Section 23:1103(C) provides:

> If either the employer or employee intervenes in the third party suit filed by the other, the intervenor shall only be responsible for a share of the reasonable legal fees and costs incurred by the attorney retained by the plaintiff, which portion shall not exceed one-third of the intervenor's recovery for prejudgment payments or prejudgment damages. The amount of the portion of attorney fees shall be determined by the district court based on the proportionate services of the attorneys which benefitted or augmented the recovery from the third party. The employee as intervenor shall not be responsible for the employer's attorney fees attributable to postjudgment damages nor will the employer as intervenor be responsible for the attorney fees attributable to the credit given to the employer under Subsection A of this Section. Costs shall include taxable court costs as well as the fees of experts retained by the plaintiff. The pro rata share of the intervenor's costs shall be based on intervenor's recovery of prejudgment payments or prejudgment damages.

This statute merely codified the holding of the Louisiana Supreme Court in *Moody* on when an attorney representing an injured plaintiff could recover attorney's fees and costs from amounts an intervenor employer recovered in the suit. *See Fleniken v. Safeway Transp., Inc.*, 859 So.2d 50, 51 n.2 (La. App. 1 Cir. 2003).

The Court has carefully considered the arguments of all parties. First, the Court notes, as argued by counsel for McCarter and Milbourn, there was no specific stipulation in the pre-trial order which prevented them from seeking *Moody* fees, only a stipulation as to the workers'

compensation payments made by Covenant. Therefore, the pre-trial order does not compel a result either way. The Court must determine whether or not Rountree and Racer should be awarded *Moody* fees.

There is no doubt that Rountree and Racer ably represented their clients, just as the attorneys for Covenant ably represented their client. There is also no doubt that the attorneys for Covenant actively participated in the trial in this matter. Even when they were not physically present in the courtroom for the damages portion of the trial, they were engaged in negotiating stipulations with the attorney for the opposing party, Jeffrey Balsamo, which saved all parties and attorneys a significant amount of time. Nevertheless, the Court finds, on balance, that Rountree and Racer should receive some portion of the amount recovered because of the benefits to Covenant provided by their representation prior to Covenant's involvement in the lawsuit and during the damages portion of the trial.

McCarter and Milbourn contend that the Court should apply the *Moody* formula. Under that formula, the Court must first determine the employer's (Covenant) "proportionate interest in the recovery by determining the ratio or percentage that the amount of compensation paid or due [to the employer] at the time of recovery bears to the total recovery." 498 So.2d at 1086. The employer may be held responsible for up to that portion of the attorney's fees. In this case, Covenant's lien, as recognized in the Court's Amended Judgment, was 46% of Milbourn's total recovery, and 21% of McCarter's total recovery. In Milbourn's case, 21% of the attorney's fees is a figure in excess of one-third of the total recovery, so Milbourn argues that Covenant should be assessed the cap amount of $3,787.56. In McCarter's case, Rountree has agreed to accept one-

third of the total recovery as attorney's fees. Forty-six percent of that amount totals $30,284.10.[6]

Given the active involvement of Covenant's own attorneys and the significant expenses incurred by Covenant for an expert at trial, the Court determines that an award of one-third the amount due to Rountree and Racer using the *Moody* formula is appropriate. Therefore, the Court awards Rountree the sum of $9,993.75 and Racer the sum of $1,249.89, plus accrued interest,[7] from the amounts otherwise due to Covenant. Covenant shall not be ordered to pay any additional amounts for costs or attorneys' fees out of their workers' compensation award.

The Court further finds that Covenant is entitled to pre-judgment and post-judgment interest on all sums awarded to it. In a post-hearing telephone conference with counsel for McCarter, Milbourn, and Covenant, the Court's law clerk was informed that McCarter and Milbourn had some objection to the calculations of interest prepared by Covenant's counsel. In a June 29, 2005 letter Rountree argued that Covenant should not receive pre-judgment interest on the amounts due to it as reimbursement for workers' compensation and medical payments. Rountree contends that the Court merely recognized Covenant's lien in the Amended Judgment, but did not specifically state that Covenant would receive pre-judgment and post-judgment interest; therefore, Covenant is not entitled to any interest. In a separate June 29, 2005, Racer joined with Rountree's objections.

---

[6]Rountree admittedly reduced his fee from 40% to one-third of the recovery, but did not wish for the Court to do the same to the amount owed by Covenant, arguing that this reduction is not required by La. Rev. Stat. § 23:1103(C)(1). That may be true, but this Court is not willing to assess a higher percentage to Covenant than Rountree accepted from his client.

[7]Any reference by the Court to "accrued interest" is to the bank interest accrued on the amounts held in the Registry of the Court. Accrued interest does not include pre-judgment or post-judgment interest.

11

The Court rejects this argument. Rountree is correct that the Amended Judgment does not specifically state that Covenant will receive pre-judgment and post-judgment interest on the lien amounts. However, the total award to McCarter and Milbourn included reimbursement for workers' compensation and medical expenses paid by Covenant, and pre-judgment and post-judgment interest was added to that award. Counsel for McCarter and Milbourn have offered no legal basis for their clients to receive the pre-judgment and post-judgment interest on amounts properly due to Covenant and for which Covenant, not McCarter and Milbourn ultimately incurred the loss. The Court finds no reason to reduce Covenant's award further than as set forth above.[8]

Covenant agrees that Rountree properly calculated pre-judgment interest on the award to McCarter as $2,569.02 and on the award to Milbourn as $789.20, using the 2005 Louisiana Judicial Interest Calculator. *See* http://www.lsba.org/newintcal.htm The Court determines post-judgment interest is to be calculated from January 5, 2005, the date of entry of final Judgment, to March 7, 2005, the date the funds were deposited into the registry of the Court. *See* 28 U.S.C. § 1961(a)-(b) (providing that the rate of post-judgment interest is calculated "from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar

---

[8]Further, the Court notes that all parties are fully aware that the intent of the Amended Judgment was not to change the amounts due to Covenant, but to ensure that the liable parties were not being required to pay the reimbursement for workers' compensation and medical payments twice–once to McCarter and Milbourn, who would then owe those amounts to Covenant, and once to Covenant directly. The Judgment was amended, so as to provide that Covenant recovered property damages directly, consistent with the jury verdict, and that its lien on the awards to McCarter and Milbourn was also recognized. That lien, however, was clearly intended by this Court to include pre-judgment and post-judgment interest in all fairness and equity.

week preceding . . . the date of the judgment," and that interest is computed daily, but compounded annually); Table, Post-Judgment Interest 2004, at http://www.txs.uscourts.gov/interest/int2004.htm (noting rate of post-judgment interest for the week of December 27, 2004, of 2.71%).[9] Therefore, Covenant is entitled to post-judgment interest of $203.74 on the award to McCarter and $55.51 on the award to Milbourn.

### III. Conclusion

For the foregoing reasons, the Court finds the Motion for Disbursement of Registry Funds [Doc. No. 362] filed by attorneys Christian Creed and Richard Wagner is DENIED AS MOOT. However, the Motion to Amend/Correct Motion for Disbursement of Registry Funds [Doc. No. 372] filed by attorneys Christian Creed and Richard Wagner is GRANTED IN PART. Mr. Creed and Mr. Wagner are awarded joint attorneys' fees in the amount of $7,500, plus accrued interest, to be deducted from the funds held in registry for Gary McCarter.

The Court further finds that the Motion for Sanctions [Doc. No. 373] filed by the McCarters is DENIED.

With regard to the disputed workers' compensation funds, the Court finds that the McCarters' Second Amended Motion to Withdraw Deposited Funds [Doc. No. 360] is DENIED AS MOOT in light of its later amendment. The McCarters' Motion to Withdraw Funds to Which There is No Dispute [Doc. No. 379] is GRANTED IN PART, and an award of attorney's fees in the amount of $9,993.75, plus accrued interest, is to be deducted from the amount due to Covenant Transport, Inc. The Motion to Withdraw Deposited Funds [Doc. No. 380] filed by

---

[9]Contrary to Rountree's assertion in correspondence to the Court, there is no "federal interest rate calculator" in the Clerk's Office, the Court computed the post-judgment interest using the same sources available to counsel.

Samuel Jacob Milbourn is also GRANTED IN PART, and an award of attorney's fees in the amount of $1,249.89, plus accrued interest, is to be deducted from the amount due to Covenant Transport, Inc. Finally, the First Amended Motion to Withdraw Deposited Funds [Doc. No. 386] filed by Covenant Transport, Inc. is also GRANTED IN PART. Covenant Transport, Inc. is entitled to withdraw $21,358.82 for property damages, $35,130.48 to cover the workers' compensation and medical payments made on behalf of Gary McCarter, and $10,957.49[10] to cover the workers' compensation and medical payments made on behalf of Jacob Milbourn, for a total of $67,446.79, plus accrued interest.

Monroe, Louisiana, this 6 day of July, 2005.

ROBERT G. JAMES
UNITED STATES DISTRICT JUDGE

---

[10] The amounts awarded to Covenant as reimbursement for workers' compensation and medical payments include all pre-judgment and post-judgment interest paid by the tortfeasors into the registry of the Court with a deduction of the attorneys' fees awarded to Rountree and Racer.

14